**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KELLY SONNENBERG, individually, and on behalf of all others similarly situated | ) )  ) ) ) |
| Plaintiffs, | ) Case No.: 13-cv-344-JPG-SCW ) |
| v. | ) ) |
| ISAI SCHEINBERG; PAUL TATE; NELSON BURTNICK; OLDFORD GROUP, LTD.; RATIONAL ENTERTAINMENT ENTERPRISES, LTD.; PYR SOFTWARE, LTD.; STELEKRAM, LTD; SPHENE INTERNATIONAL, LTD.; | ) ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT RATIONAL ENTERTAINMENT ENTERPRISES, LTD'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

COMES NOW Plaintiffs, by and through undersigned counsel, and for their Response in Opposition to Defendant Rational Entertainment Enterprises LTD's Motion to Dismiss First Amended Complaint states as follows:

The Defendant, Rational Entertainment Enterprise, LTD (hereinafter referred to as "REEL"), asks this Court to dismiss the Plaintiff's First Amended Complaint for three reasons: (1) the forfeiture of Poker Stars profits by the Federal government precludes Plaintiff's claim; (2) the court lacks personal jurisdiction over REEL; and (3) the Plaintiff has failed to state a claim for relief under the relevant Illinois statute. The Defendant's motion should be denied.

## The Illinois Anti-Gambling Statutes

Under Illinois law gambling is prohibited.[1] Relevant to this proceeding, the following is defined as illegal gambling:

    720 ILCS 5/28-1 Gambling

(a)     A person commits gambling when he:

    (1)     Plays a game of chance or skill for money or other thing of value, unless excepted in subsection (b) of this Section; or

    (2)     Makes a wager upon the result of any game, contest, or any political nomination, appointment or election; or

    (3)     Operates, keeps, owns, uses, purchases, exhibits, rents, sells, bargains for the sale or lease of, manufactures or distributes any gambling device; or

    (5)     Knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered, or knowingly possesses any money which he has received in the course of a bet or wager; or

    (11)     Knowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore, or similar means; or knowingly installs or maintains equipment for the transmissions or receipt of such information; except that nothing in this subdivision (11) prohibits transmissions or receipt of such information for use in news reporting of sporting events or contests; or

    (12)     Knowingly establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest, political nomination, appointment, or election by means of the Internet. This item (12) does not apply to activities

---

[1] 720 ILCS 5/28-1(b) exempts activities which have received specific legislature approval such as horse racing, state run lotteries, state licensed river boat gaming, etc. None of these exceptions apply here.

2

      referenced in item (6) and (6.1) of subsection (b) of this section.

Violation of this anti-gambling statute is a class A misdemeanor. However, a subsequent conviction is a class 4 felony. Illinois law also explicitly permits civil actions to combat illegal gambling. For example, all gambling "contracts" are "null and void" 720 ILCS 5/28-7.

Most pertinent to this case, Illinois law allows "any person" to sue and recover for gambling losses when certain conditions are met:

> 720 ILCS 5/28-8 Gambling Losses Recoverable
>
> (a) Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. No person who accepts from another person for transmission, and transmits, either in his own name or in the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity or stock exchange, shall, under any circumstances, be deemed a "winner" of any moneys lost by such other person in or through any such transactions.
>
> (b) If within 6 months, such person who under the terms of Subsection 28-8(a) is entitled to initiate action to re-cover his losses does not in fact pursue his remedy, any person may initiate a civil action against the winner. The court or the jury, as the case may be, shall determine the amount of the loss. After such determination, the court shall enter a judgment of triple the amount so determined.

The above statute is commonly referred to as the Loss Recovery Act ("LRA") and is the basis for Plaintiff's Complaint. The Defendant refers to this act as "arguably anachronistic," and "a statutory creation of a vanished era" (Defendant's Memorandum of Law, page 1). However, as established, the Loss Recovery Act is part of a comprehensive legislative scheme to combat illegal gambling. The anti-gambling statutes have been on the books since 1874 and, far from

being "anachronistic," the legislature has seen fit to amend them to fit modern times. For example, *720* ILCS *5/28-1 (12)* which prohibits the type of internet gambling sites maintained by the Defendant REEL, was added in 1999 and became effective in 2000. Moreover, the Seventh Circuit has identified a modern purpose behind the Loss Recovery Act, "The purpose of the Illinois Loss Recovery Act is not simply to undo illegal gambling transactions but to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism." *US v. Resnick*, 594 F.3d 562 (7th Circuit 2010).

### I. The Federal Forfeiture action does not preclude Plaintiff's action

REEL argues that its settlement with the federal government, which apparently includes forfeiture of $731 million of its ill-gotten gains, precludes this action based on state law. As a preliminary matter, this claim is not yet ripe. There is no proof that winnings from Illinois residents were included in this forfeiture. Discovery is needed on this point.

However, even without discovery the argument ignores that the Plaintiff herein is basing her action on state law. The Defendant cannot cite to any authority that the federal government's forfeiture action, or the federal money laundering statutes on which it was based, preempts state law. There is no decision which holds the federal government's anti-gambling statutes, which the Defendant does not cite, somehow occupy the entire field of anti-gambling regulations such that state regulations are precluded. In fact, the case law on federal preemption of state regulations is to the contrary. *See Gracia v. Volvo Europa Truck, N.V,.* 112 F.3d 291 (C.A.7 1997) (Federal preemption of state law can only occur in three circumstances: 1) express preemption where Congress explicitly preempts state law; 2) implied preemption where Congress has occupied the

entire field (field preemption); and 3) implied preemption where there is an actual conflict between federal and state law (conflict preemption)). None of these conditions apply here.

Instead, the scourge of illegal gambling activity is such that there is ample room for state and federal government regulation. The stipulation and order of settlement between the Defendant and the federal government, Exhibit 1 to Defendant's Motion, contains no term or recital that a state based recovery is precluded under relevant state law. Exhibit 1 only establishes, at best, that REEL resolved federal action based upon federal money laundering statutes. To state the obvious, the Plaintiff class herein is not alleging violations of any federal law. Instead, the instant claim is firmly rooted in longstanding Illinois law.

## II. This Court Has Personal Jurisdiction Over REEL

REEL's first argument for dismissal is that it would be unfair to seek a recovery for residents of Illinois that lost money due to Defendant's illegal activities because those monies have been forfeited to the federal government. This argument concedes Illinois citizens lost money to the Defendant. In contradiction to its preemption argument, REEL's second argument for dismissal is that despite Illinois citizens' losses, REEL can't be sued in Illinois. Plaintiff has been unable to conduct any discovery related to the entire scope of REEL's activities involving Illinois citizens. Illinois has the fifth largest population in the Union. It strains credibility to argue that REEL did not conduct sufficient activities in Illinois to maintain both specific and general personal jurisdiction under the familiar authorities cited by the Defendant.

Prior to discovery, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction based on legally sufficient allegations of jurisdiction. *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003); *In re Automotive Refinishing Paint Antitrust*

*Litigation*, 358 F.3d 288, 292 (3d Cir. 2004). Plaintiff's allegations are sufficient to establish personal jurisdiction. See ¶s 15 and 16 of *Plaintiff's FAC*. Also, the Plaintiff's Complaint alleges, at paragraph 19, that the "Poker Star Companies," including REEL, offered software to Illinois residents that, after downloading, allowed Illinois residents to access the illegal internet poker rooms. Apparently there is no dispute that Illinois citizens accessed the illegal on-line poker rooms from their private computers while using downloaded software provided by the Defendant.

Also, attached hereto as **Exhibit 1** is the affidavit of Kelly Sonnenberg. As this affidavit makes clear, Ms. Sonnenberg's son, Casey Sonnenberg, downloaded Pokerstar's software onto his computer in the state of Illinois. He then used that software to enter into gambling contracts with the defendant in the state of Illinois. Ultimately, Casey Sonnenberg lost money to the defendants in the state of Illinois.

The self-serving affidavit of Pinhas Shapira that after April 15, 2011 REEL has not "offered real-money online poker in the State of Illinois" (Defendant's Memorandum of Law Exhibit 2, paragraph 12) admits by omission that prior to April 15, 2011 REEL did precisely that – offer real-money online poker in Illinois – contrary to state law.

### a. The Court has Specific Jurisdiction Over Defendants

Specific, or in personam, jurisdiction depends on whether the defendant has sufficient "minimum contacts" with the forum that maintaining the suit "does not offend traditional notions of fair play and substantial justice" and that the claim at issue arose out of those contacts. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Illinois long arm statute confers jurisdiction for certain enumerated activities such as "[t]he transaction of any business within this State," *735 ILCS 5/2-209(a)(1)*, "[t]he commission

of a tortious act within this State," *735 ILCS 5/2-209(a)(2)*, and "[t]he making or performance of any contract or promise substantially connected with this State," *735 ILCS 5/2-209(a)(7).* The statute also has a catch-all provision which confers jurisdiction to the furthest extent allowed by the due process clause of the U.S. Constitution. *735 ILCS 5/2-209(c).*

Plaintiffs need only make a prima facie showing of personal jurisdiction over a defendant at the motion stage. *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Further, the court construes the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

Here, specific jurisdiction is established. Plaintiff alleges REEL is "a corporate person and the exclusive poker software developer and licensor for PokerStars. [REEL] has participated in and/or directed PokerStars and its illegal acts. [REEL] is the parent company of other PokerStars Companies." *Plaintiffs FAC, ¶* 9. Plaintiff further alleges REEL was one of "a number of companies and individuals working within the PokerStars outfit – all agents, representatives, directors, owners, officers and/or principals of the PokerStars outfit – that were joined together for the purpose of obtaining and processing players' funds. The entities in the Enterprise shared the common purposes of maintaining PokerStars's position in the market by enabling and participating in transactions with Illinois residents." *Plaintiffs FAC ¶* 22. Furthermore, REEL holds the gambling license for the Pokerstars companies from the Isle of Mann Gambling Supervision Commission.[2]

As a license holder, REEL plays an important role in the Pokerstars enterprise. "PokerStars's primary face to Illinois residents has been the PokerStars internet gambling

---

[2] http://www.gov.im/gambling/licensees/

7

venture, which includes the online card rooms accessed through the PokerStars software, which is downloaded from PokerStars's 'real-money' gambling website, 'pokerstars.com.' The PokerStars internet gambling venture is a product that was launched, directed, and managed, in part, by members of the Enterprise working in concert." See *Plaintiff's FAC*, ¶ 19.  Plaintiff also alleges Pokerstars's direct commercial contacts include accepting gambling losses from Illinois residents; soliciting Illinois players through advertisements; sponsoring high-stakes games (and ESPN poker programming) televised to residents in Illinois; obtaining contact and personal information, including bank account information, from Illinois residents through the internet; entering into a contract with internet gamblers from Illinois regarding the Pokerstars software that real money and play-money players downloaded; maintaining player accounts for all Illinois resident players and providing access to those accounts through the internet. *Id at* 21. See also attached Exhibit 1.

It is clear Pokerstars, through their software, transacted business by entering into gambling contracts with Illinois residents.  Their entire business, and this lawsuit, arises out of this conduct and those contacts with this state.

Defendants cannot argue they are not subject to personal jurisdiction in Illinois if their gambling software is found physically inside the state on players' computers. The players used this software to enter into the gambling contracts.  Indeed, a substantial portion of the alleged activity occurs inside of the boundaries of the state.   As such, specific jurisdiction is established and the defendant's motion should be denied.

### b. This Court has General Personal Jurisdiction Over Defendants

"General" jurisdiction exists where a corporation's continuous and systematic operations are so substantial and of such a nature as to justify suit against it for claims arising from dealings

8

distinct from those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

As discussed above, the defendant's contacts with Illinois are continuous and systematic. While it is clear the allegations of this lawsuit arise from these contacts, the contacts are also "so substantial and of such nature" as to confer general personal jurisdiction onto the defendants. Illinois has the fifth largest population in the Union. It is reasonable to expect that a substantial portion of Pokerstars' business comes from the state. While the affidavit of Pinhas Shapira seemingly admits Pokerstars transacted business with Illinois gamblers, it is silent as to how large of a share of the company's profits came from Illinois residents.

General personal jurisdiction is adequately alleged at this point of the proceedings. The defendant's motion should be denied, at least until further discovery can be conducted on this matter.

### III Plaintiff has stated a claim for relief under the LRA

REEL's third argument is directed toward what it contends are pleading deficiencies. Even if the court accepts the Defendant's argument, Plaintiff should be provided leave to amend. As Judge Herndon has previously held in *Hale v. State Farm Mut. Auto. Ins. Co.* 2013 WL 1287054 (S.D.Ill. March 28, 2013):

> To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed.R.Civ.P. 8(a)(2), such that the defendant is given fair notice of what the claim is and the grounds upon which it rests. Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the speculative level, assuming that all of the allegations in the complaint are true. Detailed factual allegations are not required, but the plaintiff must allege facts that, when accepted as true, state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that

>allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. (internal citations omitted)

Here, Plaintiff has sufficiently stated a claim under the LRA. As such, REEL's motion should be denied.

### a. REEL is a Winner Under the LRA

The defendant first argues Plaintiffs have failed to state a claim because REEL is not a "winner" under the statute. For this assertion, REEL plainly misstates and misapplies controlling authority.

As discussed above, the LRA is part of a larger framework of anti-gambling statutes under Illinois law. For the purposes of the LRA, gambling is defined in *720 ILCS 5/28-1* which includes "[k]nowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered, or knowingly possesses any money which he has received in the course of a bet or wager;" *720 ILCS 5/28-1(5);* [k]nowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore, or similar means; or knowingly installs or maintains equipment for the transmissions or receipt of such information;" *720 ILCS 5/28-1(11);* and/or "[k]nowingly establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest, political nomination, appointment, or election by means of the Internet." *720 ILCS 5/28-1(12).* As the LRA is the enforcement mechanism of *720 ILCS 5/28-*1, it would follow that profits derived from the illegal activities in that section would be considered "winnings" under the statute.

Indeed, Illinois courts have found persons that are not themselves players in the games still liable under the statute. *Zellers v. White,* 208 Ill. 518 (1904). See *Kruse v. Kennett et al.,* 181 Ill. 199 (1899) (broker for another in the purchase of grain under a gambling contract that receives money which is used in the payment of losses incurred in the transaction is a winner under the statute). See also *Batman v. Cook,* 120 Ill.App 203 (Ill.App.3.Dist 1905); *Larned v. Tiernan,* 110 Ill. 173 (1884). In *Zellers,* the court found liable a saloon owner who ran a draw poker game in his establishment and provided "chips" for play in exchange for money, though he never played any of the games himself. *Id.* In interpreting the statute, the court held "we think the proper construction is that *all that transpires* in playing the game of draw poker … may be regarded as one transaction or 'sitting' … [and] that *all money or other valuable thing* staked upon the game at any time during the sitting is to be regarded as in play so long as the sitting continues." *Id.* at 527-528 (emphasis added).

Here, like the defendants in *Zellers* and *Kruse*, Pokerstars is a winner under the statute. When a player loses a bet while playing on Pokerstars, a percentage of that losing bet is transferred to Pokerstars in what is commonly referred to as the "rake." This is money that is "staked" during a poker sitting and is part of what "transpired" while playing the game.

The only authority from any relevant jurisdiction cited by the defendant is *Reuter v. Mastercard Intern., Inc,* 397 Ill.App.3d 915 (2010). In *Reuter*, the court held a credit card company, Mastercard, is not a winner under the statute for interest earned on balances created when credit card users purchased virtual chips from an online casino. *Id.* While the court found no liability existed for Mastercard, its reasoning is helpful here. The court, while distinguishing *Kruse* cited above, noted that Mastercard did not "directly participate" in the gambling. *Id.* at 926.

Here, it is easy to draw distinctions between Pokerstars and Mastercard in the *Reuter* case. First, unlike Pokerstars, the conduct of Mastercard is not expressly made illegal by *720 ILCS 5/28-1*. Furthermore, Pokerstars did "directly participate" in the gambling. Their software sold the virtual chips to the players, it maintained and kept track of the player accounts, it dealt the virtual cards used in the poker games, and most importantly, it received a directly proportional share of all losing bets made on the site. Comparing Pokerstars (which literally has "poker" in its name) to Mastercard, which didn't earn profits until well after a poker sitting was over, is specious at best. Instead, Pokerstars is far more similar to the defendants in *Zellers* and *Kruse*. As the defendant here is a "winner" under the statute, REEL's motion should be denied.

**b. Plaintiff's First Amended Complaint Sufficiently Identifies a Loser or a Loss**

REEL next argues Plaintiff's First Amended Complaint fails to state a claim under *F.R.C.P.* 12(b)(6) because it does not specify a loser or specific losses. Defendants argue that pleading the identity of losers is necessary for them to determine when recoverable losses occurred.

The Defendants are mistaken that the Plaintiff has failed to identify losers. Ms. Sonnenberg has filed a class action and she has identified the "losers" under the statute that form her class, i.e. all Illinois residents that lost money participating in the Defendants illegal poker rooms who have not sued directly to recover their losses. See paragraphs 3 and 4 of Plaintiff's First Amended Complaint.

The plaintiff's complaint surely states a claim that is plausible on its face. The Illinois statute allows "any person" to "initiate a civil action against the winner." The plaintiff, Kelly Sonnenberg, satisfies that requirement. The notion that the defendants cannot defend without knowing the identity of "losers," when same is not required by statute, must fail, especially

where the information regarding "losers" is in the possession of the defendants.

### c. The "Winners" and "Losers" Were Present in Illinois at the Time of the Losses

REEL's final argument is that Plaintiff has failed to allege that the "winner" or "losers" were present in Illinois at the time of the losses. In support of their argument, REEL's memorandum of law states "[t]he LRA, like any Illinois penal law, only applies if the offense is committed wholly or partly in Illinois or if the activity outside the state is an attempt to commit an offense within the state. *720* ILCS *5/1-5*." REEL goes through great lengths to establish the reasoning behind this, but never mentions or contradicts Plaintiff's allegations or discusses where they believe the gambling actually occurred.

As discussed above in regards to personal jurisdiction, a substantial portion of the conduct alleged in this lawsuit occurred inside the state of Illinois. Illinois residents downloaded Pokerstars software onto their computers located within the state and used that software to gamble, and lose money, in Illinois. *See Plaintiff's FAC*. None of this is disputed by REEL, nor has REEL alleged where they believe the gambling occurred if it didn't occur here. Even by the defendant's own standard, plaintiff has met her burden. As such, REEL's motion should be denied.

### **CONCLUSION**

REEL's motion should be denied as the federal forfeiture action has no relevance to the instant case, the Court has jurisdiction over the defendants, and plaintiff adequately states a claim on which relief may be granted. At the very least, REEL's motion is premature as more discovery is needed to analyze their claims and defenses. For these reasons, their motion must fail.

Respectfully submitted,


/s/ Christopher Cueto
Christopher Cueto, IL 06182248
Michael Gras, IL 06303414
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962
ccueto@cuetolaw.com


Lloyd M. Cueto, IL #06292629
LAW OFFICE OF LLOYD M. CUETO
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962
cuetolm@cuetolaw.com

**ATTORNEYS FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**

Pursuant to Rule 7.1 of the Local Rules of the Southern District of Illinois, I certify that a true and correct copy of the foregoing has been properly served upon all counsel of record as required by the Federal Rules of Civil Procedure.

/s/ Christopher Cueto