IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KELLY SONNENBERG**,

**Plaintiff,**

v.                                                              No. 13-0344-DRH

**OLDFORD GROUP, LTD., and
RATIONAL ENTERTAINMENT
ENTERPRISES, LTD.,**

**Defendants.**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### Introduction and Background

Pending before the Court is defendant Rational Entertainment Enterprises, Ltd.'s motion to dismiss first amended complaint (Doc. 9). Rational Entertainment Enterprises, Ltd., moves pursuant to Federal Rules of Civil Procedure 12(b)(2) and Rule 12(b)(6), or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. Obviously, plaintiff opposes the motion (Doc. 20). Based on the following, the Court **GRANTS in part** the motion.

On January 25, 2013, Kelly Sonnenberg, individually and on behalf of all others similarly situated, filed a First Amended Complaint against Isai Scheinberg, Paul Tate, Nelson Burtnick, Oldford Group, Ltd., Pyr Software, Ltd., Stelekram, Ltd., Rational Entertainment Enterprises, Ltd. ("REEL"), and Sphene

International, Ltd for violations of the Illinois Anti-Gambling statutes (Doc. 4-1).[1] Sonnenberg alleges that defendants knowingly and intentionally accepted gambling losses through an illegal gambling enterprise known as "PokerStars" in violation of 720 ILCS 5/28-8.[2] Sonnenberg's First Amended complaint contains eight counts for violations of the 720 ILCS 5/28-1 and 720 ILCS 5/28-8 against each of the named defendants. This action purports to be a class action for "hundreds of thousands – possibly millions – of Illinois poker players who lost money to PokerStars and whose close relatives are entitled to tripled recovery of said losses in accordance with 720 ILCS 5/28-8." (Doc. 4-1, p. 4). 720 ILCS 5/28-8(a) provides:

> Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. No person who accepts from another person for transmission, and transmits, either his own name or the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity exchange, shall, under any circumstances, be deemed a "winner" of any moneys lost by such another person in or through any such transactions.

Further, 720 ILCS 5/28-8(b) provides:

> If within 6 months, such person who under the terms of subsection 28-8(a) is entitled to initiate an action to recover his losses does not in

---

[1] On December 12, 2013, the Court entered an Order acknowledging Sonnenberg's notice of dismissal and dismissed without prejudice defendants Isai Scheinberg, Sphene International, Ltd., Stelekram, Ltd., Paul Tate, Nelson Burtnick and PYR Software, Ltd. (Doc. 43).
[2] The PokerStars group of companies consists of the corporate named defendants among others.

fact pursue his remedy, any person may initiate a civil action against the winner. The Court or jury, as the case may be, shall determine the amount of the loss. After such determination, the court shall enter a judgment of triple the amount so determined.

On April 9, 2013, REEL removed the case to this Court based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d) (Doc. 4).[3] Thereafter, REEL filed a motion to dismiss arguing that: (1) the forfeiture of PokerStars Group of companies' profits by the United States and plaintiff's decision not to challenge the forfeiture precludes plaintiff's claim; (2) that the Court lacks personal jurisdiction over REEL; and (3) that plaintiff's first amended complaint fails to state a claim for relief under the LRA.[4] Plaintiff filed her response opposing the motion (Doc. 20) and REEL filed a reply (Doc. 24). On November 19, 2013, REEL filed its supplement to the motion to dismiss (Doc. 45). As the motion is ripe for ruling the Court turns to address the merits of the motion. The Court will address the question of personal jurisdiction first.

## Analysis

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi–Syntholabo,*

---

[3] On May 16, 2013, REEL filed an amended notice of removal which added the named defendants' citizenships (Doc. 19).

[4] On April 20, 2011, a civil forfeiture complaint was instituted against PokerStars in the Southern District of New York, *United States v. PokerStars, et al.,* 11-cv-02564-KMW (S.D.N.Y.) (Doc. 8). The forfeiture sought $1.5 billion, which allegedly represented the total amount of revenue processed through the gambling website. The total of PokerStars' settlement was $731 million. $547 million was actually forfeited and $184 million was paid directly to the non-U.S. players of Full Tilt Poker, whose assets PokerStars purchased directly from the government. Sonnenberg did not file a claim in the civil forfeiture action.

*S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000)). If the issue of personal jurisdiction is raised by a motion to dismiss and decided on the written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* Thus, the Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in favor of plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)(citing *Purdue Research Found.*, 338 F.3d at 782).

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and United States constitutions. 735 ILCS 5/2–209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002); *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990). When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id.*

In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)). The Court sees nothing in this case indicating that in this particular situation the federal and state standards should reach a different result. Therefore, if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff*, 95 U.S. 714, 733, 24 L.Ed. 565 (1877), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The defendant must have purposefully established such minimum contacts with the forum state such that it "should reasonably anticipate being haled into court there,"

*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980), because it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Burger King Corp. v. Rudzewicz,* 474–75 (1985); *see J. McIntyre Mach., Ltd. v. Nicastro,* ––– U.S. –––, –––, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011) (Kennedy, J., plurality opinion). In deciding whether exercising jurisdiction offends traditional notions of fair play and substantial justice, the Court may also consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir. 2002)(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8, 9 (1984)). General jurisdiction, on the other hand, may exist even in suits that do not rise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Hyatt,* 302 F.3d at 713; *Helicopteros Nacionales,* 466 U.S. at 416.

Here, the Court finds that Sonnenberg has made a prima facie case showing that the Court has personal jurisdiction over REEL. Sonnenberg alleges:

"PokerStars's primary face to Illinois residents has been the PokerStars internet gambling venture, which includes online card rooms accessed through the PokerStars software, which is downloaded from PokerStars's 'real money' gambling website, 'pokerstars.com.' The PokerStars internet gambling venture is a product that was launched, directed and managed, in part, by members of the Enterprise working in concert." (Doc. 4-1, ¶ 19). Further, Sonnenberg alleges, *inter alia,* that PokerStars accepted gambling losses from Illinois residents; bought advertisements on television programs that are readily accessible to residents of Illinois; obtained contact and personal information, including bank account information, from Illinois residents through the internet. Sonnenberg also alleges that REEL, through the PokerStars group, has participated in and/or directed PokerStars and its illegal acts. Moreover, Sonnenberg alleges that REEL was one of "a numbers of companies and individuals working within the PokerStars outfit – all agents, representatives, directors, owners, officers and/or principles of the PokerStars outfit – that were joined together for the purpose of obtaining and processing players' funds. The entities in the Enterprise shared the common purposes maintaining PokerStar's position in the market by enabling and participating in transactions with Illinois residents." (Doc. 4-1; ¶ 22). Based on the allegations, the Court finds that there is general and specific jurisdiction over REEL because of its pervasive and purposeful contacts with the State of Illinois and because Sonnenberg's claims arise of out of REEL's conduct in Illinois via the internet gambling site. Thus, the Court concludes at this stage of the litigation that

Sonnenberg has sustained her burden of establishing that the Court has personal jurisdiction over REEl. Further, the Court finds that exercising personal jurisdiction over REEL does not offend due process. The Court now turns to address the merits of the Rule 12(b)(6) portion of the motion.

Federal Rule of Civil Procedure 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6). *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008)(quoting *EEOC v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007)). First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them. This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

Second, to survive a motion to dismiss, the court determines whether the well-pleaded allegations, if true, "plausibly suggest a right to relief, raising that possibility above a speculative level." *See Iqbal* 556 U.S. at 679; *Concentra,* 496 F.3d at 776. A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal,* 556 U.S. at 678. "The plausibility standard … asks for more than a sheer possibility that a defendant acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). " 'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, *Twombly* and *Iqbal* require "the plaintiff to 'provide some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). Though the "degree of specificity required is not easily quantified, ... 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.' " *Id.* (quoting *Swanson,* 614 F.3d at 404). If a complaint does not satisfy these two criteria, "the plaintiff pleads itself out of court." *Concentra,* 496 F.3d at 776. Accordingly, a motion to dismiss may be properly granted where the plaintiff does not allege a plausible entitlement to relief either by (1) failing to provide the defendant with notice of plausible claims against it or (2) asserting only speculative or conclusory allegations in the complaint.

The "Loss Recovery Act should not be interpreted to yield an unjust or absurd result contrary to its purpose." *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997). Illinois statutes like the Loss Recovery Act (LRA") are "penal in their nature," *Robson v. Doyle*, 61 N.E. 435, 437 (Ill. 1901), "must be strictly construed." See *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013); *see also Reuter v. MasterCard Int'l, Inc.*, 921 N.E.2d 1205, 1211 (Ill. App. 2010)(noting that an Illinois Circuit Court "explained that the [Loss

Recovery Act] is penal in nature and must therefore be strictly construed.").

REEL argues that REEL is not a winner under the LRA; that plaintiff fails to identify a loser or a loss; and that plaintiff fails to allege that the "winner" or "loser" were present in Illinois at the time of the alleged loss.

First, the Court addresses the "winner" argument. Sonnenberg counters that REEL, through PokerStars, is a "winner" because when a player loses a bet while playing on PokerStars a percentage of that losing bet is transferred to PokerStars as "rake."[5] Based on the allegations contained in the first amended complaint, the Court finds that plaintiff has not alleged it is a winner under the LRA. The first amended complaint alleges that REEL is a "poker software developer and licensor for PokerStars" and the "parent company for PokerStars." (Doc. 4-1, ¶ 9).[6] A review of the pleadings indicates that the REEL (through the PokerStars group) was the operator of an online card room. Based on the allegations, the PokerStars Group is more akin to a third party service provider that provides a forum for others to play the game and does not have a stake in how the game is decided. In fact, the First Amended Complaint does not state that the PokerStars defendants made any bets or wagers and does not state that PokerStars won any bets or wagers that would qualify under the statute as "winners."

---

5 The cases cited by Sonnenberg, *Zellers v. White*, 70 N.E. 669, 671 (1904) (defendant was an owner of gambling establishment that kept its agents' winnings) and *Kruse v. Kennet et al.*, 181 Ill. 199 (1899)( defendant brokerage firm which entered into contracts to bet on grain prices), are distinguishable from the case at bar. In those cases, the defendants had a direct stake in the outcome of the gambling.
6 Plaintiff also alleges that PokerStars did business through [REEL]" as though REEL were the subordinate entity. (Doc. 4-1, ¶ 6).

Page **10** of **12**

Sonnenberg does not allege that PokerStars participates in the games itself. Absent such allegations, REEL cannot be a considered a "winner." According to the allegations contained in the amended complaint, the PokerStars Group acted as a conduit for transmission of the prize money to the winner and it did not risk any of its money in producing the prize money to the winner. As recently stated by District Judge Thomas M. Durkin of the Northern District of Illinois:

> "Illinois Courts have held that 'the winner and not the keeper of the house is liable to the loser,' unless the keeper of the house also risks money in the gambling activity. *Holmes v. Brickey*, 82 N.E.2d 200, 202 (Ill App. 1948)(citing *Ranney v. Flinn*, 60 Ill. App. 104 (3d. Dist. 1894). Thus, in *Ranney*, the Appellate Court emphasized that the owner of a saloon who provided a room for poker games was only a winner when he actually played in the games. 60 Ill. App. at 105. Further, in *Zellers v. White*, 70 N.E. 669, 671 (Ill. 1904), the owner of a gambling house was a winner not because he provided rooms for poker games, but because he also paid employees to participate in the poker games on behalf of the house. *See also Moushon v. AAA Amusement, Inc.*, 641 N.E.2d 1201 (Ill. App. Ct. 4th Dist. 1994)(restaurant owner who provided access to video poker games and slot machines was a "winner" because the owner gained the money people lost playing the games)."

*Langone v. Kaiserand FanDuel, Inc.*, 12-cv-02071 (N.D. Ill. Oct. 9, 2013). The Court finds this reasoning valid and instructive. Based on the allegations contained in the first amended complaint, plaintiff has not pled that REEL is a "winner." Thus, the Court finds that dismissal without prejudice is warranted.

Further, the Court agrees with REEL that plaintiff has not alleged in sufficient detail a "loser" or a "loss." While Sonnenberg's affidavit in response to the motion to dismiss states that she is seeking recovery based on her son's losses; the first amended complaint is devoid of allegations stating the "who" "what" and

"when" of the losses she seeks to recover. However, the Court finds that Sonnenberg has sufficiently alleged that the losses occurred in Illinois through the illegal gambling internet site.

Lastly, the Court finds that the parties have not adequately developed/addressed REEL's argument that the forfeiture of the PokerStars group of companies' profits by the United States precludes this cause of action. Therefore, the Court is not in a position to rule on that issue at this time.

## Conclusion

Accordingly, the Court **GRANTS in part** REEL's motion to dismiss (Doc. 9). The Court **DISMISSES without prejudice** Count V of the First Amended Complaint against REEL. Further, the Court **DENIES** as moot the motions for oral argument (Docs. 11 & 33). The Court **ALLOWS** Sonnenberg up to and including April 12, 2014 to file an amended complaint that comports with this Memorandum and Order, the Federal Rules of Civil Procedure and the Local Rules.

**IT IS SO ORDERED.**

Signed this 14th day of March, 2014.

Digitally signed by
David R. Herndon
Date: 2014.03.14
08:19:36 -05'00'

**Chief Judge
United States District Court**