IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLY SONNENBERG, individually, and on behalf of the class she represents | ) <br> ) <br> ) |
| and | ) <br> ) |
| CASEY SONNENBERG, individually, and on behalf of the class he represents | ) <br> ) <br> ) |
| Plaintiffs, | ) Case No.: 13-cv-344-DRH-SCW <br> ) |
| v. | ) <br> ) |
| OLDFORD GROUP, LTD.; RATIONAL ENTERTAINMENT ENTERPRISES, LTD.; and UNKNOWN DEFENDANTS | ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COMES NOW Plaintiffs, by and through undersigned counsel, and for their Response in Opposition to Defendants' Motion to Dismiss Second Amended Complaint state as follows:

**INTRODUCTION**

**The Plaintiffs Second Amended Complaint**

The Plaintiffs, Kelly Sonnenberg and Casey Sonnenberg, are class representatives of Illinois citizens seeking to recover losses resulting from the Defendants' illegal operation of an internet gambling site. The reasons that two separate individuals have filed claims is because Kelly and Casey rely upon different sections of Illinois' Anti-Gambling statute, 720 ILCS 5/28 et. seq.

Kelly Sonnenberg's claims, stated in counts 1, 5, and 9[1] of the Second Amended Complaint, relies upon 728 ILCS 5/28-8, commonly known as the Loss Recovery Act. Kelly Sonnenberg did not lose money nor play on the Defendants' illegal site but, as more fully set out, that is not a requirement under the Loss Recovery Act.

Casey Sonnenberg did lose money playing on the Defendants' illegal site. His claims are stated in Counts 2, 3, 4, 6, 7, 8, 10, 11, and 12 of the Second Amended Complaint. These counts rely upon sections of the Illinois Anti-Gambling statute other than the Loss Recovery Act.

**The Illinois Anti-Gambling statute, 728 ILCS 5/28 et. seq.**

The Illinois Anti-Gambling statute contains nine sections; although section 6 was repealed. The Complaint sets out the relevant sections for the lawsuit, (Second Amended Complaint paragraphs 19, 20, 21, and 22). These sections will be more fully discussed in other parts of this memo. However, by way of introduction, the Committee Comments are relevant here:

> Gambling has long since been recognized as an activity detrimental to the best interest of society, primarily because of the evil consequences which accompany it. (See Peterson, Gambling Should It Be Legalized? (1951).) Illinois, like most other states, has prohibited certain types of gambling almost from the inception of government in the state. The laws proscribing this activity date from as early as 1874. That statute prohibited gaming generally, the keeping of a gaming house, gambling in futures, and made gambling contracts void. This law was followed by prohibitions on bookmaking and pool selling…
>
> Article 28 represents an attempt to present a unified statute which correctly express as public policy of the state towards gambling and at the same time avoids ambiguity and inconsistency. (Committee Comments to Article 28)

---

[1] The Complaint mistakenly lists Count 9 as Count IV. Second Amended Complaint, page 24.

## ARGUMENT

As this Court has noted: "motions to dismiss . . . 'must receive careful scrutiny' and are 'not often granted.'" *United States v. City of Fairview Heights, Ill.*, 132 F. Supp. 2d 684, 686 (S.D. Ill. 2000) (quoting *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 420 (7th Cir. 1994)). This is because the issue is not whether a plaintiff will ultimately prevail on his claims but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

A court must assume as true all well-pleaded facts and reasonable inferences, and construes these in the light most favorable to the plaintiff when ruling on a *12(b)(6)* motion to dismiss. See *Fries v. Helsper,* 146 F.3d 452 (7th Cir. 1998) citing *Wiemerslage Through Wilmerslage v. Maine Twp. High School Dist.,* 29 F.3d 1149 (7th Cir. 1994). A claim may only be dismissed if it is beyond doubt that no set of facts would entitle the plaintiff to relief. See *Travel All over the World, Inc.* v. *Kingdom of Saudi Arabia,* 73 F.3d 1423 (7th Cir. 1996) citing *Conley v. Gibson*, 355 U.S. 41 (1957).

Here, the Defendants' motion must be denied. Kelly Sonnenberg has adequately plead a cause of action pursuant to 720 ILCS 5/28-8. She has alleged that the defendants are "winners" pursuant to the statute and has identified both the loser and losses she seeks to recover for. Furthermore, Casey Sonnenberg has also adequately plead causes of action pursuant to 720 ILCS 5/28-1, -3, and -7. A private cause of action can be implied from a criminal statute under Illinois law. Also, as all gambling contracts are null and void, recovery is proper for all monies lost pursuant to said contracts, and recovery may be had for any violation of Article 28. (See 720 ILCS 5/28-7(a).

3

## I. Kelly Sonnenberg Has Adequately Plead a Claim for Relief Under Illinois Law

As discussed above, Kelly Sonnenberg's cause of action is alleged pursuant to 720 ILCS 5/28-8.

### A. Defendants are Winners and are Liable for Plaintiffs' Losses Under Illinois Law

In dismissing Plaintiffs' First Amended Complaint, the Court relied heavily on a recent Northern District of Illinois decision, *Langone v. Kaiser and FanDuel, Inc.,* 2013 WL 5567587 (N.D. Ill. Oct. 9, 2013). That case was decided after the parties here completed briefing on Defendants' Motion to Dismiss the First Amended Complaint. As such, Plaintiffs never had the opportunity to argue the application or correctness of that non-binding decision.

The Defendants here are considered "winners" and are liable for losses of Illinois gamblers in two distinct ways. First, the Defendants won money directly from Illinois gamblers in the form of a "rake" from the games. In poker, the "rake" is the portion of money kept by the operator of a card room as a commission for hosting the game. Under Illinois law, the rake is considered "winnings" for the house. Second, the Defendants are also liable for all of the losses of Illinois gamblers on Pokerstars, including money lost to other individual gamblers, pursuant to *720* ILCS *5/28-3*.

**(1). The Defendants won money directly from Illinois residents in the form of a "rake" collected from each game they hosted.**

In *Langone*, the court held an operator of a "fantasy sports" website was not considered a winner for the purposes of the LRA as they did not wager or risk any money themselves. *Id.* at 7.

Instead, the court noted they functioned as "the house" and acted as a conduit for transmission of the prize to other participants. *Id.*

It's worth first noting the distinction between fantasy sports and poker. In *Langone,* the Defendants' games allowed participants to choose "professional players in a given sport ... and to compete against other fantasy sports participants based upon the actual performance of those players in key statistical categories." *Id.* at 1. Here, the Defendants operated online card rooms that offered live poker. However, even if the analysis is the same for online poker and online fantasy sports, the *Langone* court misinterpreted relevant Illinois law and reached an incorrect holding.

The *Langone* court relied on two cases to hold that the keeper of a gambling house is not liable to a loser unless they also risk money gambling. *Id.* at 7, citing *Holmes v. Brickey*, 82 N.E.2d 200, 202 (Ill.App. 3Dist. 1948); *Ranney v. Flinn*, 60 Ill.App. 104 (Ill.App. 3Dist. 1894). These cases, however, do not stand for that proposition.

*Ranney*'s facts are similar to the instant case. There, a saloon owner kept a room upstairs in which he allowed patrons to gamble at poker. *Id.* Like the Defendants here, the saloon owner received a portion of the money wagered on each hand as a rake, or commission, for hosting the games. *Id.* A judgment was entered against the Defendants for which they appealed. *Id.* The court reversed the judgment as there was insufficient evidence to show that the Plaintiff lost more than the statutory minimum to the Defendant. *Id.* at 105.

The court in *Langone* stated "in *Ranney*, the Court emphasized that the owner of a saloon who provided a room for poker games was only a winner when he actually played in the games."

*Langone* at 7. This is a misstatement of the holding. The *Ranney* court expressly did not offer an opinion as to whether a "rake" constituted winnings. *Ranney* at 105. The Court stated:

> The evidence tends to show that [the saloon owner] received compensation for the use of the room in "chips," representing money, whenever certain hands were held--and that Flinn had frequent occasion to contribute "chips" to the table in this way--but assuming that money so received by the defendant was money won by him within the statute, *as to which no opinion need be expressed*, there is no proof that he ever received thus as much as $10 from Flinn at any one sitting. *Id.* (emphasis added)

Thus, the *Ranney* decision does not apply here as it was decided on a jurisdictional basis and does not speak to whether a rake can be considered "winnings" of the house. However, while there was no holding on the issue either way, the *Ranney* court certainly contemplated the possibility of this being the case.

The *Langone* court similarly misapplied *Holmes* in its decision. In *Holmes,* the court reversed a lower court's granting of a motion to dismiss an amended complaint that made similar allegations as Kelly Sonnenberg makes here. The *Holmes* defendants operated a gambling establishment in which the Plaintiff lost money. *Holmes* at 200. The Plaintiff brought an action against the owner of the establishment for these losses. *Id.* The court held that Plaintiffs stated a valid cause of action:

> As to the amended complaint stating a cause of action, it will be noted that the allegations are that the defendant conducted a gambling establishment and that as a result of the plaintiff having engaged in gambling games at the place of the defendant he owed the defendant certain money in excess of $10.00 as a result of certain games of chance played with dice, and that he did *pay to the defendant* certain sums of money as a result of the losses incurred in said games and on no other consideration. These allegations are clear and concise and include every fact necessary for the plaintiff to prove to entitle him to succeed. Such allegations

are sufficient to state a cause of action. *Id.* at 202. (emphasis in original)

The *Holmes* court went on to address the ruling in *Rammey* and, though it did state that the "winner and not the keeper of the house is liable to the loser," it did not say that the establishment's rake is not considered winnings. Indeed, it noted that "[w]e do not believe that the decision in *Ranney* intended any comfort for operators of gambling houses, but rather imposes the burden on the plaintiff to allege and prove who did win his money or thing of value, be he the owner of a gambling house or just a fellow gambler." *Id.* Like the amended complaint in *Holmes,* Kelly Sonnenberg has alleged a loss greater than the statutory minimum was paid *to the defendants* by her son, Casey. Kelly must now have the opportunity to prove with evidence that the defendants were the winners of this money. As such, and like in *Holmes,* the Motion to Dismiss should be denied.

**(2).   The Defendants are also liable for all of the losses of Illinois gamblers pursuant to 720 ILCS 5/28-3.**

Besides the money won by the Defendants directly in the form of the rake, the Defendants are also liable for all of the losses of Illinois residents on Pokerstars pursuant to *720 ILCS 5/28-3*. This section makes the keeping of a "gambling place" illegal. *Id.* Furthermore, subsection (c) states "[s]uch premises of any person who knowingly permits thereon a violation of any Section of this Article <u>shall be held liable for</u>, and may be sold to pay any unsatisfied judgment that may be recovered and any unsatisfied fine that may be levied under any Section of this Article." *720* ILCS *5/28-3(c)*. Emphasis Supplied.

As detailed herein, and as admitted to in their memorandum, the Defendants have violated numerous provisions of multiple sections of the Anti-Gambling Article. By a plain

reading of this section, the Defendants *shall* be liable for all losses caused by those violations. As such, the motion to dismiss should be denied.

### B. Kelly Sonnenberg Has Adequately Identified a Loser and a Loss

In Plaintiffs' Second Amended Complaint, Kelly Sonnenberg identifies a loser and the losses she seeks to recover. The Second Amended Complaint states Kelly's son Casey Sonnenberg "had an account with Pokerstars and has lost money amounting to a sum of $50.00 or more to the Defendants." See *SAC* ¶ 4. This identifies a) the identity of the loser, b) the loss that is sought to recover, and c) the identity of the winners of these losses. This is sufficient for the purposes of this Complaint. For further details, see the affidavit of Casey Sonnenberg attached as **Exhibit A.**

Furthermore, specifics of Casey Sonnenberg's, and all other Illinois gamblers', history of losses are in the control of the defendants. The Court should deny the Defendants' motion to dismiss and allow discovery into their player data.

### II. Casey Sonnenberg Has Stated a Claim for Relief Under the Illinois Anti-Gambling Statute.

As previously mentioned Casey Sonnenberg has stated claims in Count 2 (relying upon 728 ILCS 5/28-1), 3 (relying upon 728 ILCS 5/28-3), 4 (relying upon 728 ILCS 5/28-7) against Rational Entertainment Enterprises, LTD and identical theories in Counts 6, 7, and 8 against the Defendant, Oldford Group, LTD.

### A. 728 ILCS 5/28-1 Allows a Civil Cause of Action for the Class Represented by Casey

The relevant portions of 728 ILCS 5/28-1 relied upon by Casey Sonnenberg in Counts 2 and 6 are as follows:

    728 ILCS 5/28-1 Gambling

(a)      A person commits gambling when he:

    (1)      Plays a game of chance or skill for money or other thing of value, unless excepted in subsection (b) of this Section; or

    (2)      Makes a wager upon the result of any game, contest, or any political nomination, appointment or election; or

    (3)      Operates, keeps, owns, uses, purchases, exhibits, rents, sells, bargains for the sale or lease of, manufactures or distributes any gambling device; or

    (5)      Knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or registered, or knowingly possesses any money which he has received in the course of a bet or wager; or

    (11)      Knowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore, or similar means; or knowingly installs or maintains equipment for the transmissions or receipt of such information; except that nothing in this subdivision (11) prohibits transmissions or receipt of such information for use in news reporting of sporting events or contests; or

    (12)      Knowingly establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wage upon the result of any game, contest, political nomination, appointment, or election by means of the Internet. This item (12) does not apply to activities referenced in item (6) and (6.1) of subsection (b) of this section.

Under section (c) of 28-1 a person who initially violates these provisions is guilty of a class A misdemeanor while a subsequent conviction is a class 4 felony.

The Defendants maintain that a criminal statute may not provide the basis for a civil cause of action. (Defendants Motion to Dismiss, pages 12 through 14) However, the Defendants have failed to cite the relevant law. The Defendants cite two cases for the proposition that a criminal statute cannot be used to support a civil cause of action: *Mallet v. Wisconsin Division of Vocational Rehabilitation* 130 F. 3d 1245 (7th Circuit 1997) and *Israel Aircraft Industries, LTD v. Sanwa Business Credit Corp.* 16 F. 3d 200 (7th Circuit 1994) These cases do not apply here because the criminal statutes at issue in those cases were federal criminal statutes, not state statutes.

In interpreting a state statute, a federal court must apply that state's statutory construction principles. See *Brownsburg Area Patrons v. Baldwin*, 137 F. 3d 503, 507 (7th Circuit 1998). Under longstanding Illinois law a court may determine that a private cause of action is implied in a statute even if the explicit language of the statute does not provide for one. *Fischer v. Lexington Health Care*, 188 Ill. 2d 455, 722 N.E. 2d 1115 (1999).

The test to determine if a private right of action is appropriate involves balancing four factors: (1) the Plaintiff is a member of the class for whose benefit the statute was enacted, (2) the Plaintiff suffered an injury that the statute was designed to prevent, (3) a private cause of action is consistent with the underlying purpose of the statute, and (4) a private right of action is necessary to provide an adequate remedy for statutory violations. *Id.* at 460. For a recent case applying these principles see *Cowper v. Nyberg*, 2014 IL App (5th) 120415 Consideration of these factors strongly favor Casey Sonnenberg's right to bring the present suit.

**(1). Casey Sonnenberg and the class he seeks to represent are persons for whose benefits 720 ILCS 5/28-1 was enacted.**

As previously established 720 ILCS 5/28-1 was enacted to prevent the scourge of gambling. The Defendants make no argument that their conduct was legal under 728 ILCS 5/28-1. As a recidivist offender, the Defendants have committed numerous felonies under Illinois law. Casey Sonnenberg has cited six provisions of 5/28-1 to support his claim, especially relevant is section (12) which make it illegal to "knowingly establish, maintain, or operate an Internet site that permits a person to play a game of chance on skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contract, political nomination, election or appointment by means of the Internet.[2]

Casey Sonnenberg has alleged that he had an account with Pokerstars and lost money gambling on the Defendants' illegal gambling website. (Second Amended Complaint paragraphs 4 and 6) as well as representing a class of similarly situated victims (Second Amended Complaint, paragraphs 49 through 56). The proposed Plaintiff's class are precisely the persons who were intended to be protected by the anti-gambling statute.

**(2). The proposed class suffered injuries that the statute was designed to protect against.**

This factor is also in the Plaintiff's favor. Casey Sonnenberg seeks to recover losses for the class of people who suffered injury (losses) on account of the Defendants' illegal Internet gambling site. (Second Amended Complaint, paragraph 49) He seeks to represent only "Illinois gamblers" who lost money on the Defendants illegal website. (*Id.*) Clearly, the proposed class are persons who suffered injuries which the statute was designed to protect against, or why even make it illegal to "knowingly establish, maintain, or operate" an Internet gambling site?

**(3). Casey Sonnenberg's private cause of action asserted in the Second Amended Complaint is consistent with the purpose of 720 ILCS 5/28-1.**

---

[2] "Internet" is defined at 720 ILCS 5/28-2(a)(5).

As stated, Casey Sonnenberg only seeks to represent a class of "Illinois" citizens who suffered losses on the Defendants' illegal site. He is not seeking a nationwide class or to represent any persons who have no arguable claim to the protection of Illinois law. An award of damages to such a class is completely consistent with the intent of the legislature to protect Illinois citizens from the scourge of illegal gambling and, especially, the scourge of illegal internet gambling, Again, see 720 ILCS 5/28-1 (a)(12).

Put somewhat differently, an award of damages to the class proposed by Casey Sonnenberg would not be inconsistent with the clear goals of Illinois anti-gambling statute, 720 ILCS 5/28-1. Again, this factor strongly favors Casey Sonnenberg's assertion of a private cause of action.

**(4).   Implying a private cause of action to Casey Sonnenberg's proposed class is necessary to provide an adequate remedy for violations of 720 ILCS 5/28-1.**

For whatever reason, no Illinois prosecutor has charged the Defendants for their admitted violation of Illinois' prohibition of illegal gambling by operating an illegal internet gambling website. Therefore, these Defendants are not at any risk of criminal conviction. Even if they were facing such a prosecution, an implied private cause of action might still be necessary to financially compensate victims.

However, without any threat of criminal prosecution, Casey Sonnenberg's proposed class is necessary to provide an adequate remedy to those harmed by the Defendants' commission of numerous illegal acts. Casey's suit is available to provide an adequate remedy for the Defendants' illegal activity. Apparently, it is the <u>only</u> remedy to address the harms the Illinois legislature sought to prevent by enacting Section 28-1.

In conclusion, each of the four factors used by courts to decide whether an Illinois statute implies a private cause of action are in favor of Casey Sonnenberg's proposed class. If an implied right to private action is not found here, then there will be no vindication of the legislative intent behind Illinois' Anti-Gambling statute. The instant suit is why Illinois courts allow a private cause of action to be implied through no explicit statutory language supports it; without such a suit, the law will be unenforced.

Finally, as to this point, it seems clear that 720 ILCS 5/28-7 provides an explicit right to pursue a civil suit for violations of Section 28-1 and all other criminal prohibitions against gambling under Article 28. Section 28-7 will be discussed again below but it is relevant to point out in this portion of the brief that it allows a court to declare "null and void" any monies "won" or obtained in <u>violation of any section of this Article</u> 720 ILCS 5/28-7(a) Emphasis Supplied.

Therefore, any losses suffered by victims due to the Defendants violation of Section 28-1, may be recovered because Section 28-7 renders the obligation to pay same null and void. This is the explicit right to a civil remedy the Defendants claim does not exist. Should the court feel this straight forward analysis in error, then, for reasons already stated, Casey Sonnenberg, individually and on behalf of others similarly situated, can maintain a civil action for violations of Section 28-1.

**B.**     **728 ILCS 5/28-3, Keeping a Gambling Place Allows an Implied Private Cause of Action for the Class of Victims Represented by Casey Sonnenberg**

720 ILCS 5/28-3 makes it illegal to Keep a Gambling Place. Specifically, "any person who knowingly permits any premises or property owned or occupied by him or under his control to be used as a gambling place" commits a misdemeanor. A subsequent offense is a class four felony. For all of the reasons stated previously with regard to 5/28-1, a private cause of action

should be applied here as well. Without it, the law will be unenforced and victims left without recourse or without the protection of the law the legislature intended.

### C. Casey Sonnenberg has stated a cause of action under 720 ILCS 5/28-7

This statute explicitly provides for a civil remedy. It imposes no criminal liability. In pertinent part it states:

> 5/28-7 Gambling Contracts Void
>
> (a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof is for any money or thing of value, <u>won or obtained in violation of any Section of this Article are null and void.</u>
>
> (b) Any obligation void under this Section may be set aside and vacated by any court of competent jurisdiction, upon a complaint filed for that purpose, by the person so granting, giving, entering into, or executing the same, or by his executors or administrators, or by any creditor, heir, legatee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person stated above, on due notice thereof given. (Emphasis added.)

The Defendants admit that, "This provision of the Illinois gambling statute was drafted to void existing obligations incurred in gambling contracts." (Defendants Motion to Dismiss, paragraph 14) Of course, that is precisely what Casey Sonnenberg's suit seeks, to void all of the illegal contracts the Defendants entered into with Illinois citizens and to return all ill-gotten gains back to the victims of the Defendants' illegal schemes.

Seemingly the Defendants admission admits all. However, the Defendants argue that Casey's suit under this provision cannot stand because "typically" this provision is used as an

"affirmative defense" (*Id.*) Perhaps that is its most common use in the reported cases but there is nothing in the broad statutory language that would so limit it.

Section (a) states that "<u>all</u>" gambling contracts, "where the whole or <u>any</u> part of the consideration thereof is for <u>any</u> money or thing of value, won or obtained in violation of <u>any</u> Section of this Article are null and void.

Section (b) stands in complete opposition to the Defendants' position. It states that "<u>Any</u> obligation void under this section may be set aside and vacated by <u>any</u> court of competent jurisdiction, <u>upon a complaint filed for that purpose,</u> by the person … entering into, or executing same…"

The most important rule of statutory construction is the language of the statute. Here, especially at section (b) the explicit statutory language supports the right of a person, such as Casey Sonnenberg, who has "entered into" an illegal gambling contract to file a complaint for the purpose of holding those contracts null and void. That is precisely what Casey Sonnenberg has done, both for himself individually and on behalf of a class of similarly situated victims of the Defendants illegal schemes.

If the legislature intended this section to be limited to an "affirmative defense" it clearly knows how to do so. But that is not the language the legislature employed. It chose broad language which made this provision applicable to undo all illegal gambling contracts, any "money or thing of value won an obtained <u>in violation of any Section of this Article</u> are null and void." 720 ILCS 5/28-7(b). Emphasis Supplied.

Actually, in light of the fact that this section applies to any violation of any section of Article 28, it stands as the explicit grant to pursue a civil remedy, regardless of any "implied"

right. Of course, unlike the next section, 28-8, seemingly only the actual loser can pursue a remedy under this section which is why Casey filed his own action.

The Defendants argument that Section 28-7 can only be used as an affirmative defense and not the basis of a suit for damages because the next section, the Loss Recovery Act Section 28-8, provides for a civil recovery is without merit. (Defendant's Memorandum paragraph 14) Again, such an argument is belied by explicit statutory language. Moreover, section 28-8, the Loss Recovery Act permits "any person" to sue to recover gambling losses if the actual loser does not. This demonstrates that the legislature was so intent upon providing a civil remedy to victims of illegal gambling that they permitted actual losers under Section 28-7 to sue to declare an illegal gambling contract null and void and if that right went unexercised, then under Section 28-8 "any person" could bring such a suit.

Likewise, the defense assertion that Section 28-7 applies only to "existing obligations" (Defendants Memorandum, p. 14) is belied by explicit statutory language. Again, the term "existing obligations" does not appear in the statute and surely the legislature could have used the term if it intended to so limit the remedy it did provide. If the term "existing obligations" is given its ordinary meaning, i.e. an obligation not yet satisfied, then clearly the statute rejects such an approach.

Section 28-7(a), by express terms, renders gambling contracts void even if the "obligation" is no longer "existing." It uses the past tense numerous times. "(a) All promises, notes, bills, bonds, covenants, contracts, <u>made, given, drawn, or entered into,</u> or <u>executed</u>, by any person whatsoever, … <u>won</u> or <u>obtained</u> in violation of any section of this Article are null and void." 720 ILCS 5/28-7(a).

16

Because of their illegal gambling activities, the Defendants "won" or "obtained" losses from Casey Sonnenberg and others similarly situated. In accord with the remedy provided by Section 28-7, the Plaintiff class seeks to undo those losses by having this Court declare the "conveyances made, given, drawn, or entered into, or executed" by the Plaintiff class to be "null and void."

## CONCLUSION

For the reasons stated herein, the Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Christopher Cueto
Christopher Cueto, IL 06182248
Michael Gras, IL 06303414
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962
ccueto@cuetolaw.com


Lloyd M. Cueto, IL #06292629
LAW OFFICE OF LLOYD M. CUETO
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962
cuetolm@cuetolaw.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 7.1 of the Local Rules of the Southern District of Illinois, I certify that a true and correct copy of the foregoing has been properly served upon all counsel of record as required by the Federal Rules of Civil Procedure.

/s/ Christopher Cueto